CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
2/17/2022
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
       DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JUDY M. PAUL,<br><br>    *Plaintiff*,<br><br>v.<br><br>WESTERN EXPRESS, INC., *et al.*,<br><br>    *Defendants*. | CASE NO. 6:20-cv-00051 |
| ANDRE G.H. LE DOUX, V,<br><br>    *Plaintiff*,<br><br>v.<br><br>WESTERN EXPRESS, INC., *et al.*,<br><br>    *Defendants*. | CASE NO. 6:20-cv-00052<br><br>JUDGE NORMAN K. MOON |

**Memorandum Opinion**

On a rainy afternoon in August of 2018, a tractor-trailer operated by Defendant Ervin Joseph Worthy collided with two passenger vehicles stopped on Interstate 81. The drivers of the passenger vehicles, Plaintiffs Judy M. Paul and Andre G.H. Le Doux, V, suffered catastrophic injuries as a result of the crash.

Plaintiffs allege that co-Defendant Western Express, Inc. employed Worthy, and that Worthy was acting in furtherance of Western's business interests at the time of the accident.

Having filed nearly identical complaints, Plaintiffs' cases were eventually consolidated by consent motion. *See Le Doux v. Western Express, Inc.*, No. 6:20-cv-52, Dkt. 32. In April

2021, the Court concluded that Plaintiffs had pled sufficient facts to state a claim for willful and wanton negligence against Worthy, but it dismissed Plaintiffs' direct negligence claims against Western. *See Paul v. Western Express, Inc.*, No. 6:20-cv-51, Dkt. 67; Dkt. 39 (*Le Doux*). Plaintiffs subsequently filed amended complaints, which were again virtually identical to one another, raising new claims against Western for negligent hiring and negligent retention. Dkt. 98 (*Paul*); Dkt. 46 (*Le Doux*), ("Amended Complaints").

Currently before the Court is Western's motion to dismiss Plaintiffs' amended complaints. Dkt 100 (*Paul*); Dkt. 47 (*Le Doux*). Western's motion will be denied because the amended complaints state facts that give rise to plausible claims of negligent hiring and negligent retention.

# I

The following facts are alleged in Plaintiffs' amended complaints and assumed true for purposes of resolving this motion. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (explaining standard of review). On August 11, 2018, at approximately 5:07 p.m., Paul was driving southbound in the left lane of I-81 near mile marker 184.8 in Rockbridge County, Virginia. It was raining heavily—enough that the vehicles in front of Paul were either slowing or fully stopped. Paul also stopped. Le Doux, who was driving immediately behind Paul, also stopped.

The driver behind Le Doux (formerly a co-defendant in this case) struck the rear of Le Doux's car before spinning off the road. Le Doux's car, carried forward by the impact, lurched forward and collided with Paul's car, propelling Paul off the road. Shortly thereafter, Worthy crashed into both Paul and Le Doux, causing both Plaintiffs to suffer traumatic injuries. *See* Amended Complaints ¶¶ 16–22.

Plaintiffs allege that Worthy's failure to avoid crashing into them resulted from "failure to maintain proper control of his vehicle," "failure to keep a proper lookout and attention, driving too fast for existing conditions, [negligently] using cruise control on his heavy commercial motor vehicle in hazardous conditions, following traffic ahead too closely, and his other failures to exercise reasonable care and comply with the applicable Federal Motor Carrier Safety Regulations[.]" *Id*. at ¶ 23.

Plaintiffs negligent hiring and negligent retention claims are based on the following records concerning Worthy's history as a commercial driver, all of which Plaintiffs allege to have been available to Western on or before Worthy's first day in its employ.

- **Motor Vehicle Record Abstract ("MVR Abstract")**, dated June 21, 2018.
    - Worthy's MVR Abstract reflects a total risk score of 56, placing Worthy in the "risk category" of "fail." According to Plaintiffs, the risk assessment is based, "among other things," on the following infractions:
        - Georgia serious commercial disqualification, which Plaintiffs allege resulted from two "serious traffic violations," and required a 60-day suspension of Worthy's CDL. Allegedly, the predicate traffic violations were:
            - A following-too-closely violation, dated 05/11/2016; and,
            - An improper/erratic lane change violation, dated 07/18/2016.

- **Federal Motor Carrier Safety Administration Pre-Employment Screening Program Detailed Report ("PSP Report")**, dated June 29, 2018.
    - Worthy's PSP Report showed that he was involved in a crash in Alabama in July 2015, wherein Worthy overcorrected after his breaks locked-up, resulting in his rig being overturned. At the scene, Worthy admitted that he was driving fatigued. It also showed a September 2015 crash in Florida about which the amended complaints provides no information.

- **Xchange Report**, dated June 29, 2018.
    - This report was provided by Worthy's previous employer, Soothe Trans. LLC, another commercial driving company. It disclosed that Worthy had been terminated for "too many incidents;" and that he had been deemed ineligible for rehire.[1]

---

[1] It is at times difficult to discern from the amended complaints what details are reported in

*Id*. at ¶ 14.

In addition to showing a propensity for unsafe driving, Plaintiffs argue that these records show a propensity for dishonesty that would have prompted a reasonably diligent employer to investigate further. Worthy allegedly told Western in his application for hire that he had no moving violations or traffic convictions in the past three years, and that he had left his employment with Soofe Trans. LLC voluntarily.

## II

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 211 (4th Cir. 2019). A complaint is considered sufficient if it alleges facts that, taken as true, plausibly state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Only facts can render a claim for relief plausible. "[F]ormulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor is it sufficient for a plaintiff to plead facts merely consistent with liability. The plaintiff must plead enough factual content to nudge a claim across the border from mere possibility to plausibility. *Id*. at 570. *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## III

Western construes the Court's previous order dismissing Plaintiffs' direct negligence claims against it as also setting forth a finding that the Federal Motor Carrier Safety Regulations ("FMCSRs") "set the standard of care in this case." Dkt. 103, p. 4. More than a few logical

---

which records. However, nothing about the source of the information recounted above would change the Court's analysis.

layovers stand between the Court's actual holding and the conclusion at which Western arrives. In fact, the Court held only that Plaintiffs' original complaints had failed to plead facts giving rise to a facially plausible claim that Western violated its duty under FMCSR § 390.11 to ensure that its drivers observed their own duties under the FMCSRs. Nowhere did the Court state that the FMCSRs were the exclusive source of tort liability applicable to this case.

Nor has Western offered a legal rationale that would cause the Court to draw such a conclusion. The parties agree that Virginia law applies to this case. And Western cites no precedent, from Virginia or otherwise, for its contention, presented at the hearing on this motion, that traditional tort duties should yield to the FMCSRs as a matter of public policy to reduce the variability of duties carriers operating in multiple states may face in the hiring decision.

Nor has Western offered any argument that the FMCSRs preempted common law causes of action. Here, as with many if not most federal regulations, "[i]t would have been perfectly rational for Congress not to pre-empt common-law claims, which—unlike most administrative and legislative regulations—necessarily perform an important remedial role in compensating accident victims." *Sprietsma v. Mercury Marine*, 537 U.S. 51, 64 (2002).

Regardless, the FMCSRs impose a duty on motor carriers to ensure that its drivers can "by reason of training or experience, safely operate the type of vehicle [they will] be driving[.]" FMCSR § 391.11. Even if the FMCSRs provided the exclusive standard of care, the standards it articulates are broad enough to encompass the allegations Plaintiffs set forth. *See Schlimmer v. Poverty Hunt Club*, 597 S.E.2d 43, 46 (Va. 2004) (explaining the elements of a negligence per se claim); *McKeown v. Rahim*, 446 F. Supp. 3d 69, 76 (W.D. Va. 2020) (Dillon, J.) (holding that FMCSRs "may form the basis of a negligence per se claim in Virginia.").

## Negligent Hiring

> Liability for negligent hiring is based upon an employer's failure to exercise reasonable care in placing an individual with known propensities, or propensities that should have been discovered by reasonable investigation, in an employment position which, due to the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others.

*Interim Personnel of Central Va., Inc. v. Messer*, 559 S.E.2d 704, 707 (Va. 2002). Moreover, to find that an employer's negligent hiring "was the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligent or wrongful act, and that the injury would have been foreseen in the light of the attending circumstances." *Id*. at 708.

Thus, to survive a motion to dismiss Plaintiffs must plead sufficient facts to render plausible their claim that Western failed to exercise reasonable care in vetting Worthy for employment, and that their injuries were a foreseeable result of that failure. Of course, it is not necessary that Plaintiffs' *exact* injuries were foreseeable, but only that "an ordinary, prudent person ought, under the circumstances, to have foreseen that an injury might probably (not possibly) result from the negligent act." *Id*.

As recited above, Plaintiffs allege that, based on the various records available to it, Western knew or should have known that Worthy had a dangerous propensity for bad driving.

With respect to Plaintiffs' allegations of Worthy's dishonesty, Western correctly argues, Dkt. 103 at 8, that this does little to establish Western's actual or constructive knowledge of a dangerous propensity that could foreseeably result in the kind of injuries Plaintiffs suffered. One can be a pathological liar and still an excellent driver. It is true that a reasonably prudent employer would investigate further after discovering an applicant had lied about his driving record. But that is merely to raise the possibility that further investigation would turn up

something pointing to a dangerous propensity for bad driving. Plaintiffs must do more than raise a possibility, however. They must state sufficient facts to make their claim plausible.

Plaintiffs also cite Worthy's MVR Abstract, which allegedly showed that Worthy previously had his professional driver's CDL suspended due to the accumulation of two "serious traffic violations," as that term is defined in Georgia Code § 40-5-152; namely, an improper (erratic) lane change violation and a following-too-closely violation. Standing alone, this allegation is insufficient to make Worthy a negligent hire. The named violations are relatively minor as road infractions go—a fact reflected by the suspension's limited 60-day duration. Georgia did not, for instance, consider these infractions so egregious as to render Worthy permanently unfit to return to the roadways. Put another way, if it is always negligent to hire a driver with a Georgia suspension like this one on their record, such a suspension would become a career-ender rather than the 60-day probationary penalty Georgia appears to have intended.

But Plaintiffs allege more. And while the following allegations might also be insufficient in isolation, everything taken together gives rise to a facially plausible claim. First, they allege that the MVR Abstract calculated Worthy's "total risk score" at 56, placing Worthy in a "risk category" of "fail." It is not entirely clear from the amended complaints what factors went into this risk score. It may be that some factors are unrelated to driving and thus would not suggest a dangerous propensity for bad driving. However, given that this is a motor vehicle record it is at least plausible that Worthy is being scored on his driving. And at this juncture facts must be viewed in the light most favorable to the Plaintiffs. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999).

Second, Plaintiffs point to two crashes allegedly reflected by the PSP Report. Again, the amended complaints offer limited factual detail about the crashes. More is provided with respect

to the accident occurring in July 2015. Plaintiffs state that Worthy's breaks locked-up, that Worthy overcorrected and flipped his rig, and that Worthy stated he was fatigued at the scene. The amended complaints are completely silent, however, with respect to the details of the September 2015 crash.

Third, and most compelling, is the allegation concerning the Xchange report from Worthy's previous employer. From this report Western allegedly would have learned that Worthy was fired from his previous job as a tractor-trailer operator because of "too many incidents." Incidents, moreover, that were serious enough to render him disqualified from consideration for rehire. To be sure, the amended complaints do not detail the nature of the incidents. Nonetheless, it is more than plausible that a reasonably prudent employer would follow up on such information. And, as with Worthy's failing risk category, it is also plausible, given the context and viewing all facts in the light most favorable to Plaintiffs, to conclude that the relevant "incidents" would turn out to relate to Worthy's driving.

This presents a close case. But taking the allegations together, the Court concludes that Plaintiffs have succeeded in nudging their claims across the border from possibility to plausibility and have justified proceeding to the discovery phase of litigation.

### Negligent Retention

The cause of action for negligent retention simply carries the point at which negligent-hiring-type liability can arise beyond the moment the hiring decision was made. *Darnell v. Lloyd*, No. 4:14-cv-94, 2016 WL 1464564, at *3 (E.D. Va. Apr. 13, 2016) (Morgan, J) ("Negligent hiring and negligent retention require essentially the same allegations; the difference lies in when the employer knew or should have known about its employee's misconduct and taken appropriate action."). *See also A.H. by next of friends C.H. v. Church of God in Christ,*

*Inc.*, 831 S.E.2d 460, 629 (Va. 2019) (explaining that a claim for negligent retention exists "for harm resulting from the employer's negligence in retaining a dangerous employee who the employer knew or should have known was dangerous and likely to harm others.") (cleaned up). Except that "a prima facie case of negligent retention requires an amplified showing that both the nature and gravity of the risk render unreasonable any mitigating response short of termination." *A.H.*, 831 S.E.2d at 629.

Since it is not entirely clear from the amended complaints at what point Western knew or should have known the alleged facts concerning Worthy's driving record, the motion to dismiss will be denied as to the negligent retention claim as well.

## IV

The Plaintiffs amended complaints are sufficient and have stated plausible claims for relief for negligent hiring and negligent retention. As such, the Court will deny Western's motion to dismiss, Dkt 100 (*Paul*); Dkt. 47 (*Le Doux*).

****

The Clerk of the Court is hereby directed to send this Memorandum Opinion to all counsel of record.

Entered this  17th  day of February 2022.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE